UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-10208-JLT

EDUARDO LOPEZ, *Pro Se*,                    )
        Plaintiff,                    )
                                  )
v.                                          )
                                  )
MICHAEL MALONEY, EDWARD FICCO,              )
and MARK REILLY,                            )
        Defendants.                   )

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants submit this memorandum of law in support of their Motion to Dismiss.

**INTRODUCTION**

Plaintiff, an inmate lawfully in the custody of the Massachusetts Department of Correction ("DOC"), is presently confined at Souza-Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts. Plaintiff names as defendants: Michael Maloney, the former Commissioner of DOC; Edward Ficco, the former Superintendent of SBCC; and Mark Reilly, Chief of the Division of Investigative Services for DOC. Plaintiff has filed this civil action purportedly pursuant to 42 U.S.C. §1983, seeking solely declaratory relief for the harm he allegedly sustained as a result of being identified as a member of a security threat group ("STG").

Defendants respectfully submit that plaintiff does not have a state or federal right in not being identified as belonging to a gang. Accordingly, defendants move to dismiss plaintiff's Complaint for failure to state a claim upon which relief may be granted.

**UNDISPUTED FACTS**

Plaintiff is a New Hampshire inmate serving a life sentence. He has been legally committed to the custody of the Massachusetts DOC pursuant to an interstate agreement with New Hampshire. In recent years the DOC has witnessed the growth within the prisoner population of warring gangs and other groups which pose a threat to the safety and security of Department institutions.[1] Given the threat to institutional security by inmates who are members of gangs or other security threat groups, the Commissioner, on April 19, 1995, exercising his statutory authority as set forth in G.L. c. 124[2], issued a memorandum to all inmates advising them that inmates who are members of security threat groups will not be permitted to transfer below medium security.[3] With this policy came a process by which inmates who are members of

---

[1]  The Massachusetts Superior Court has recognized the vast increase in the numbers of gang members now incarcerated within the Department. In the case of <u>Haverty, et al. v. DuBois, et al.</u>, Suffolk Sup. Ct. C.A. # 95-3634, Judge Chernoff, in his "Memorandum and Rulings" (dated July 14, 1995) on the prisoner plaintiffs motion for preliminary injunctive relief, cogently stated that "[n]o authority need be cited for the proposition that society's problems are mirrored, and indeed substantially magnified, in our prisons. The recent infusion into the state prison of substantial numbers of members of warring gangs has presented the corrections system with unprecedented problems in controlling the institution and making it reasonably safe for staff and inmates."

[2]  M.G.L. c. 124, § 1 specifically provides that the commissioner shall:

> (a) designate, establish, maintain, and administer such state correctional facilities as he deems necessary ....

> (b) maintain security, safety and order at all state correctional facilities, utilize the resources of the department to prevent escapes from any such facility, take all necessary precautions to prevent the occurrence or spread of any disorder, riot or insurrection at any such facility, including but not limited to the development, planning, and coordination of emergency riot procedures with the commissioner of public safety, and take suitable measures for the restoration or order;

> (q) make and promulgate necessary rules and regulations incident to the exercise of his powers and the performance of his duties including but not limited to rules and regulations regarding ... safety, discipline, ... classification ... care and custody for all persons committed to correctional facilities.

3  It is further important to note that this restriction on inmates who are identified as STG members is no longer in place. Specifically, inmates who are identified as STG members may be classified to any security level. STG membership in and of itself no longer has any effect upon inmate placement within the DOC. Moreover, as a result of the Massachusetts Supreme Judicial Court decision in Haverty, et al. v. Commissioner of Correction, et al., 727 Mass 437 (2002), and the proceedings on remand, inmates who are identified as STG members are no longer subject to placement in restrictive units at MCI-Cedar Junction. Rather, those inmates who participate in STG related activities and pose a substantial threat to the safety and security of MCI-Cedar Junction and/or other DOC

gangs or other security threat groups could renounce their membership in or affiliation with the gang or threat group.

Based upon evaluative information received by the Department from another law enforcement agency as well as information received by the Department's own internal investigation, plaintiff was notified in writing by Mark Reilly, Chief of Investigations/Intelligence for the Department, that he had been identified as a member of a STG.  Complaint, at ¶7.  This letter advised plaintiff that he was entitled to request a meeting with Chief Reilly to dispute this identification.  See Correspondence, attached to Plaintiff's Complaint.  Plaintiff provided a written account disputing such membership.  In addition, plaintiff was provided a meeting with investigative services on April 11, 2002.  Subsequently, plaintiff was validated as a member of a STG.  See id.

## ARGUMENT

I.    **STANDARD OF REVIEW**

A motion to dismiss the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true.  Hugh v. Rowe, 449 U.S. 5, 10 (1980).  A complaint must fail if it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would be entitled to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Nadar v. Citron, 372 Mass. 96, 98 (1977).  To withstand a motion to dismiss, plaintiff must "set forth minimal facts, not subjective characterizations, as to who did what to whom and why."  Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied 461 U.S. 944 (1983).  Although the threshold for stating a claim may be low, it is real.  Gooley v. Mobil Oil Corp., 851

---

institutions may be placed in restrictive units provided that process is received as set forth in 103 CMR 421.00, *et seq.*

F. 2d 513, 514 (1st Cir. 1988).  Because plaintiff has not stated a valid claim under federal law,

any constitutional claim, or any valid claim under state law, the complaint must be dismissed.

## II.    PLAINTIFF CANNOT SUE DEFENDANTS IN THEIR OFFICIAL CAPACITY UNDER 42 U.S.C. §1983.

Plaintiff has sued Commissioner Maloney, Superintendent Ficco, and Chief Reilly solely

in their official.  See Complaint, ¶¶ 3-5.  Plaintiff's claims against these defendants in their

official capacities under 42 U.S.C. §1983 fail as a matter of law as state officials in their official

capacities are not "persons" within the meaning of §1983.  Will v. Michigan Dep't. Of State

Police, 491 U.S. 58, 66 (1989)("a suit against  a state official in his or her official capacity is not

a suit against the official but rather is a suit against the official's office . . . .  As such, it is not

different from suit against the State itself").  Thus, plaintiff's constitutional claims against

defendants in their official capacities must be dismissed as a matter of law.

## III.    PLAINTIFF HAS FAILED TO STATE ANY CLAIMS AGAINST DEFENDANTS MALONEY OR FICCO.

There are no factual allegations in the complaint against defendants Maloney or Ficco.

Their names appear only in the case caption and where the names of the parties are listed in the

Complaint. (Complaint, at ¶3 and 4).  Where a complaint alleges no specific act or conduct on

the part of defendant and the complaint is silent as to defendant except for his/her name

appearing in the caption, the complaint is properly dismissed, even under the liberal construction

to be given pro se complaints.  Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974); See also

Mmoe v. Commonwealth, 393 Mass. 617, 620 (1985)(even pro se litigants' pleadings must

comply with rules of civil procedure).  To the extent plaintiff's theory of liability is based upon

defendants Maloney or Ficco's supervisory status, the complaint must still be dismissed because

supervisory liability may not be predicated upon a theory of respondeat superior.  Monell v.

4

Dept. of Social Services, 436 U.S. 658, 690-92 (1978); Gurtierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989) (citations omitted).

In the absence of personal involvement, a supervisor is liable for the acts of a subordinate only if (1) the subordinate's behavior results in a constitutional violation and (2) the supervisor's action was "affirmatively linked" to the behavior only in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference. Hegarty v. Somerset County, 53 F. 3d 1367, 1379-1380 (1st Cir. 1995). Negligence is inadequate to establish supervisory liability. Febus-Rodriguez v. Betancourt-Lebron, 14 F. 3d 87 (1st Cir. 1994). Plaintiff must show that the supervisor acted with deliberate indifference, in addition to a causation requirement linking the supervisor's conduct to the subordinates violative conduct. Maldonado-Denis v. Castillo-Rodriguez, 23 F. 3d 576, 582 (1st Cir. 1994); Febus-Rodriguez, supra, at 92 (supervisor's acts or omissions must amount to the reckless or callous indifference to the constitutional rights of others; i.e., that it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights). Plaintiff alleges no facts linking defendants Maloney or Ficco to the alleged violations. Moreover, plaintiff fails to allege that defendants Maloney or Ficco supervised any other individuals named in plaintiff's Complaint.

Accordingly, as a matter of law, defendants Maloney and Ficco must be dismissed from this action.

IV.    **PLAINTIFF FAILS TO ALLEGE A CAUSE OF ACTION PURSUANT TO 42 U.S.C. 1983.**

      A.    **PLAINTIFF'S FIRST AMENDMENT RIGHTS WERE NOT VIOLATED.**

Plaintiff's complaint alleges violation of Federal Due Process Rights.  The United States Supreme Court has determined that a "prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correctional system." Pell v. Procunier, 417 U.S. 817, 822 (1974) (striking down content-based outgoing mail restriction due to consequential infringement on First Amendment rights of those who are not prisoners).  It is beyond dispute that an inmate's First Amendment rights are subject to restrictions necessitated by the essential goals of prison administration in providing for the safety, security and internal order of correctional facilities.  Procunier v. Pell, 417 U.S. at 822-823; Turner v. Safley, 482 U.S. 78, 84 (1987)(prisoners' First Amendment rights "must be exercised with due regard for the 'inordinately' difficult undertaking that is modern prison administration"); Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)(prison administrators are entitled to considerable deference in making decisions in the interest of prison security); Bell v. Wolfish, 441 U.S. 520, 546-48 (1979). The Bell court stated;

> [S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations…The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights…Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security. . . . Prison administrators, therefore, should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. . . . Such considerations are peculiarly within the province and professional expertise of correction officials, and in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these conditions, courts should ordinarily defer to their expert judgment in such matters.

Gomes v. Fair, 783 F. 2d 517, 524 (1st Cir. 1984)(internal citations omitted)("even in the presence of legitimate first amendment concerns, considerable deference is due to the 'expert' judgment of prison administrators"); Champagne v. Commissioner of Correction, 395 Mass. 382, 386-387 (1985)(prison restrictions which infringe on inmate First Amendment rights should be evaluated in light of the goal of safeguarding institutional security); Cacicio v. Secretary of Public Safety, 422 Mass. 764, 769 (1996)(the deference due prison administrators "is particularly pronounced in the context of regulations enacted by correction officials that concern institutional security issues").

In the case at bar, defendants contend that plaintiff's First Amendment rights were not infringed because he, in fact, was not punished for his identification as a member of a STG. Moreover, such identification had absolutely no effect upon his incarceration status, nor does plaintiff allege that his identification has any effect upon his incarceration status. Similarly, plaintiff has never been treated any differently from any other inmate as a result of his STG designation. Plaintiff alleges simply that his right to associate with other inmates has been infringed upon because he has been identified as a member of a STG. However, plaintiff fails to state any facts which demonstrate that he has not been able to associate with any other inmates. Moreover, plaintiff does not have an unfettered right to associate in any manner with other inmates. Plaintiff's mere designation as a member of a STG has no effect upon his housing and has no effect upon his simple association with others. Plaintiff simply cannot join with other inmates to pose a risk to the safety and security of the institution, assault other inmates, assault staff or commit any other activity that is not allowed within the facility.

Assuming *arguendo* that plaintiff's identification as a STG member implicates a First Amendment right, defendant contends that his identification is based upon legitimate safety and security concerns. Specifically, inmates are carefully screened for any prior activity with known gangs outside of prison, then specifically monitored for potential alliance with STGs once incarcerated. In so doing, the DOC simply monitors and tracks those inmates who have aligned themselves with known STG members and who commit group disciplinary offenses due to the serious threat to the safety, security and orderly running of the institutions within the Department. In determining whether the defendant's actions, in identifying plaintiff as a STG, in the instant case were reasonable, the decision of the First Court of Appeals in Gomes, *supra*, provides guidance. In Gomes, the issue before the court was whether subjecting the inmate to disciplinary proceedings for giving a staff member a "sexually explicit" poem violated his rights under the First Amendment. In overturning the lower court's permanent injunction enjoining the defendants from conducting a disciplinary hearing, the First Circuit admonished the lower court for failing to give proper deference to the prison administrators' right to make judgments on matters within their expertise. The Gomes court held that the lower court incorrectly deemed the defendants' actions unreasonable, stating:

> The concept of reasonableness, however, must be applied so as to give, in the words of the Wolfish court, "wide-ranging deference" to prison administrators on questions of prison security and discipline. A court should not give "reasonableness" such a constricted meaning that it includes only the measure the court would take were it running the prison itself. Even if the prison official's evaluation of an incident is significantly different from the court's, their view is entitled to prevail so long as honestly held and within rational boundaries. . . . And in assessing the quality of the evidence, the district court must recognize that prison administrators draw upon an experience peculiar to the institutions they control and to the inmates within. Only recently, the Supreme Court said, [i]n assessing the seriousness of a threat to institutional security prison administrators necessarily draw on more than specific facts surrounding a particular incident[.] . . . . In the volatile atmosphere of a prison, an inmate may constitute an unacceptable

> threat to the safety of other prisoners and guards even if he himself has committed
> no misconduct; rumor, reputation, and even more imponderable factors may
> suffice to spark potentially disastrous incidents. The judgments of prison officials
> in this context…turns largely on purely subjective evaluations and on predictions
> of future behavior.

Gomes, *supra*, at 525 (internal citations and quotations omitted).

Here, defendants have not disciplined plaintiff in any manner. Rather, defendants have simply identified plaintiff as a STG member. As plaintiff himself pled, he was further given the opportunity to rebut this designation. Moreover, plaintiff's designation as a STG member has never effected any part of his incarceration. Rather, such designation has simply been used as a means to monitor those inmates who may pose a significant threat to the safety and security of the DOC. The prison administrators reasonably felt that plaintiff was a member of a known STG; therefore, he was identified as a member of such and the standard certification procedures followed due to the possibility of a threat to the safety of staff and other inmates, and the internal order of the DOC institutions.

The fact that an individual, ie. the plaintiff, may disagree with defendant's designation of him as a member of a STG does not obviate the well-established principle that prison administrators should be accorded "wide-ranging" deference in decisions pertaining to preserving safety and internal order of a penal facility. Plaintiff has failed to allege any cognizable First Amendment claim as a result of his STG designation.

### B.    PLAINTIFF HAS NOT ALLEGED A DUE PROCESS VIOLATION WITH REGARD TO HIS IDENTIFICATION AS A MEMBER OF A SECURITY THREAT GROUP.

Plaintiff attempts to state a claim under 42 U.S.C. §1983 with regard to his identification as a member of a STG; therefore, he was required to plead and show that solely by being labeled a member of a gang and thus a security threat, that he was deprived of a right, privilege or

9

immunity granted by the U.S. Constitution or by the laws of the United States. <u>Parratt v. Taylor</u>, 451 U.S. 527, 555 (1981); <u>Miga v. Holyoke</u>, 398 Mass. 343, 349 (1986). Plaintiff cannot meet this burden to sustain such a claim.

1.    <b><u>The Due Process Clause Itself.</u></b>

In the context of a prison inmate, a state is prohibited, by the Fourteenth Amendment, from depriving a person of life, liberty or property without due process of law. <u>Meachum v. Fano</u>, 427 U.S. 215, 233 (1976). The test for determining a due process violation is first whether plaintiff has been deprived of a liberty interest within the meaning of the due process clause and if so, was that deprivation accomplished without due process of law. <u>Id.</u> A liberty interest, protected by the due process clause, may arise from one of two sources, (1) the due process clause itself, and/or (2) state law. <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983).

Due process and the interests it protects "'are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" <u>Parratt</u>, *supra*, at 529 n.1 (1981)(*quoting* <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). The Due Process Clause does not, in and of itself, restrict prison officials' discretionary authority when managing their respective institutions. The administration of a prison is "at best an extraordinarily difficult undertaking," and broad discretionary authority is necessary. <u>Id.</u>, at 467; *quoting*, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 566 (1974). The Supreme Court has cautioned against subjecting what has traditionally been the discretionary business and actions of prison administrators to the wide spectrum of judicial review. <u>Meachum</u>, *supra*, at 225. Additionally, it has long been held that the lawfully incarcerated retain only a narrow range of protected liberty interests. <u>Hewitt</u>,

10

*supra*, at 467.  The Supreme Court has also consistently refused to recognize more than the most

basic liberty interests for inmates.

2.    <strong><u>State Created Liberty Interest</u></strong>

In <u>Sandin v. Conner</u>, 115 S.Ct. 2293 (1995), the Court criticized its former precedent

under which courts examined the language in state statutes and regulations to determine whether

a liberty interest was created.  This doctrine "encouraged prisoners to comb regulations in search

of mandatory language on which to base entitlements to various state-conferred privileges."  <u>Id.</u>,

at 2299.  The Court expressed two policy concerns: its prior approach "creates disincentives for

States to codify prison management procedures in the interest of uniform treatment."  <u>Id.</u>  The

old approach also "has led to the involvement of federal courts in the day-to-day management of

prisons," contrary to cases affording state officials appropriate deference and flexibility in prison

management.  <u>Id.</u>

The Court held that states may still create liberty interests that afford prisoners due

process protections, but strictly limited these areas by explaining that:

> [T]hese interests will be generally limited to freedom from restraint which, while
> not exceeding the sentence in such an unexpected manner as to give rise to
> protection by the Due Process Clause of its own force ... , nonetheless imposes
> <u>atypical and significant hardship on the inmate in relation to the ordinary
> incidents of prison life</u>.

<u>Id.</u>, at 2300 (internal citations omitted)(emphasis added).  Applying this standard to the prisoner

in <u>Sandin</u>, the Court concluded that disciplining a prisoner for thirty days in segregated

confinement "did not present the type of atypical, significant deprivation in which a state might

conceivably create a liberty interest."  <u>Id.</u>, at 2301.

With respect to gang affiliation courts have applied the teachings of <u>Sandin</u> and held that a determination that a prisoner is a member of a gang which results in a particular classification4 did not by itself constitute a deprivation of a constitutionally cognizable liberty interest since such a label and any resulting classification did not exceed the sentence in such an unexpected manner as to give rise to the protections of the Due Process clause and did not impose atypical and significant hardships in relation to the ordinary incidents of prison life.  <u>Pichardo v. Kinker</u>, 73 F.3d 612, 613 (5th Cir. 1996); <u>Luken v. Scott</u>, 71 F.3d 192, 193 (5th Cir. 1995) (confinement in administrative segregation based on allegedly false information in his prison file regarding gang membership did not deny inmate due process where he was given opportunity to rebut this information and received his normal classification hearing).

3.       **Plaintiff Cannot Demonstrate a Liberty Interest in Not Being Identified as a STG Member.**

A determination that a prisoner is a member of a STG, does not by itself constitute a deprivation of a constitutionally cognizable liberty interest because such a label will not increase plaintiff's sentence in any manner, as to give rise to the protections of the due process clause and did not impose an "atypical and significant hardship in relation to the ordinary incidents of prison life."  <u>Pichardo</u>, *supra, citing* <u>Sandin</u>, *supra*.  Moreover, applying <u>Sandin</u>, plaintiff failed to state a cause of action on his claims that his Fourteenth Amendment due process rights were violated, because he can not establish that he had a liberty interest in not being labeled a member of a gang or that such identification constitutes an "atypical and significant hardship" such that due process protections would attach.

---

4  It is important to note that in the case at bar, plaintiff does not even allege that his identification as a STG member effected his classification, and in fact, presents evidence that it did not effect any aspect of his incarceration.

Similarly, the Massachusetts courts have applied the Supreme Court's teachings in Sandin and held that a determination that a prisoner is a member of a gang which results in a particular classification does not, by itself, constitute a deprivation of a constitutionally cognizable liberty interest. Samuels v. Maloney, et al., Suffolk Superior Court, Civil Action No. 97-6889-E, "Memorandum of Decision and Order on Cross Motions for Summary Judgment" (Garsh, J., November 18, 1998) (R.A. 75-84). Not only do prisoners have no state or federal constitutional right not to be labeled a gang member or member of some other prison STG, but such a label does not in any way "implicate a state liberty interest." Samuels, supra, at 4-5 (R.A. 78-79). See also, McCoy v. Michael Maloney, et al., Suffolk Superior Court, C.A. No. 98-0196, "Memorandum of Decision and Order on Cross Motions For Summary Judgment" (Sikora, J.; September 14, 1998)(R.A. 85-98). Moreover, in an advisory opinion, the Massachusetts Appeals Court recently held that the mere identification as a member of a STG does not implicate an existing liberty or property interest. Dahl v. Commissioner of Correction, et al., 01-P-146 (July 15, 2004).

Similarly, plaintiff does not have a liberty interest in being free from being labeled as a STG member. Plaintiff further argues that because the DOC has not informed him of the basis for his identification, his rights have been violated. First, without a due process violation, plaintiff's claim fails. Similarly, the mere fact that the Department will not provide plaintiff with the basis for his designation as a STG member does not make his subsequent label arbitrary and capricious.

Recognizing the special security issues that are inherent to a prison setting, the laws have carved out exceptions that prevent inmates from accessing materials that would jeopardize the safety and security of the institution. With respect to his identification as a member of a STG,

plaintiff has no right to review the information in the Department's possession to support this identification.  The labeling of prisoners as gang members is purely a discretionary administrative action that is non-reviewable by the Court.  Pertinent DOC regulations provide the following:

> Evaluative information:  Records, data, or reports concerning individuals charged with a crime and compiled by criminal justice agencies, which apprize mental condition, physical condition, extent of social adjustment, rehabilitative progress and the like, and which are primarily used in connection with bail, pre-trial or post-trial release proceedings, sentencing, correctional and rehabilitative planning, probation or parole.

103 CMR 157.06.[5]

Moreover, 103 CMR 157.14(1) provides prisoners with the opportunity to challenge evaluative information pertaining to them that is contained in their institutional file by

> writing [to] the superintendent of the institution to purge, modify or supplement the evaluative information or take other appropriate remedial action. . . .  If the individual is not satisfied with the response of the superintendent or designee . . . the individual may, in writing, request review by the Commissioner.  The Commissioner or his/her designee shall respond, in writing, to the individual within fifteen days.  **The decision of the Commissioner shall be final.  Any challenge by the individual regarding the accuracy or completeness of the evaluative information shall become part of the individual's file.**

(emphasis added).  In the case at bar, plaintiff, availed himself of the opportunity to challenge the evaluative information by writing to the Chief of Investigative Services on January 28, 2002 and to the Commissioner of Correction on November 1, 2002, as evidenced by the exhibits attached to plaintiff's Complaint.  The Commissioner appropriately responded indicating that he specifically considered the correspondence.  Id.

---

5  This definition is identical to the definition provided in M.G.L. c. 6, §167 (the Criminal Offender Record Information System, C.O.R.I. law).

Furthermore, M.G.L. c. 6, §167, *et seq*. (the Criminal Offender Record Information System, also known as the "C.O.R.I." law) contains a comprehensive statutory system regarding criminal records. By definition, criminal offender record information shall not include evaluative information. M.G.L. c. 6, §167. M.G.L. c. 6, §171 provides, in pertinent part, that,

> [t]he content and use of evaluative information, and the inspection, receipt of copies and challenge of such information by an individual shall not be governed by the provisions of this act except as provided in this paragraph. **Each criminal justice agency holding evaluative information shall**, pursuant to section two of chapter thirty A, **promulgate regulations to govern** the content and use of evaluative information, and to govern, **limit or prohibit** the inspection, receipt of copies and **challenge of such information by an individual referred to therein**.

(emphasis added). Plaintiff cites to no federal or state law which establishes a right to challenge the accuracy of "evaluative" information. The very term "evaluative" indicates that the information involves a subjective assessment of objective data. The Massachusetts legislature has established a comprehensive system for criminal offender records, and, in its collective wisdom, it has declined to legislate an avenue to challenge evaluative information in the courts.

By his invocation of the federal and state constitution, even if plaintiff suggests that there is a substantive due process right to accurate evaluative information, and, consequently, a right to challenge such information. In the prison context, the substantive due process analysis inquires whether the official conduct that is alleged to have imposed an unconstitutional burden upon the prisoner's rights is "'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns." Turner v. Safely, 482 U.S. 78, 87 (1987). While the Turner analysis is not a perfect fit to the situation here it is by way of analogy the most appropriate. The official conduct being challenged here is the right of the Department to evaluate data that it collects through internal investigations or provided to it by other law

15

enforcement agencies and to limit the challenge to the accuracy of the evaluation to an "in-house" review coupled with a documentation of the inmate's challenge if any.

It is unquestionably a legitimate penological objective to make "evaluative" assessments of an inmate's threat to institutional safety and security. Common sense dictates that this assessment include inmates that admit that they are members of a gang or STG, or like plaintiff, inmates that say they are not members of the STG but where an internal investigation corroborates information to the contrary. To open such discretionary administrative actions and evaluations to inspection and challenge by inmates as to their "accuracy" would inevitably chill the Department's ability to obtain honest assessments and shared information from other law enforcement agencies, or more to the point, is when the evaluative information is the direct result of a Department in-house investigation wherein information was obtained from investigative sources that may include confidential prisoner informants.

        4.      **Plaintiff Has Not Alleged a Cause of Action Under the Eighth Amendment to the United States Constitution or Article 26 of the Massachusetts Constitution.**

Plaintiff simply alleges that his Eighth Amendment rights and his rights under Article 26 have been violated by defendants identifying him as a member of a STG. Plaintiff fails to allege any further facts in this regard or make any other factual claims that his incarceration violates his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment of the U.S. Constitution and Article 26 of the Massachusetts Declaration of Rights impose a duty on prison officials to ensure that inmates receive humane conditions of confinement. Farmer v. Brennan, 511 U.S. 825 (1994); Michaud v. Sheriff of Essex County, 390 Mass. 523, 534 (1983). Under the federal standard "[p]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of

the inmates'" <u>Farmer</u>, *supra*, at 832; *quoting* <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-527 (1984). For a violation under the Eighth Amendment to occur, plaintiff must establish that the alleged violation must be objectively sufficiently serious to the extent that it denied the inmate "the minimal civilized measure of life's necessities." <u>Farmer</u>, *supra*, at 834; *quoting* <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). Next, plaintiff must establish that the denial was an "unnecessary and wanton infliction of pain." <u>Farmer</u>, *supra*, at 832; *quoting* <u>Wilson v. Seiter</u>, 501 U.S. 294, 302-303 (1991). Furthermore, in prison conditions cases, the prison official must have a "sufficiently culpable state of mind." The standard is met if the official is deliberately indifferent to the inmate's health or safety. <u>Id.</u> To be deliberately indifferent, the prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed and must draw that inference. <u>Farmer</u>, *supra*, at 837.

The standard for Article 26 violations is that plaintiff must demonstrate that "both (1) a condition or situation 'which poses a substantial risk of serious harm' *and* (2) facts establishing that a prison official 'has knowledge of the situation and ignores it.'" <u>Torres v. Comm'r of Corr.</u>, 427 Mass. 611, 617 (1998) *quoting* <u>Good v. Comm'r of Corr.</u>, 417 Mass. 329, 336 (1994). The Supreme Judicial Court has determined that rights guaranteed under Article 26 are at least equally as broad as those guaranteed under the Eighth Amendment. <u>Michaud</u>, *supra*, at 534.

Thus to state an Eighth Amendment or Article 26 claim, plaintiff must establish first an objective element, *i.e.* was there a substantial and serious harm, and next a subjective element, *i.e.*, did the prison official understand that a harm existed and did he consciously disregard the harm. Here, plaintiff's allegation that he has been identified as a member of a STG does not rise to the level of an Eighth Amendment or Article 26 violation, as it has not effected his

17

incarceration in any manner.  In fact plaintiff has identified any substantial or serious harm and his Eighth Amendment and Article 26 claims fail.

### C.    PLAINTIFF HAS FAILED TO STATE A COGNIZABLE CLAIM PURSUANT TO ARTICLE 1 OF THE MASSACHUSETTS CONSTITUTION.

Article 1 provides that

> [a]ll people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness. Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin.

Mass. Decl. of Rights, Pt. 1, Art. 1.  The Supreme Judicial Court has construed Article I to afford due process protection equivalent to that supplied by the Fourteenth Amendment to the United States Constitution.  City of Boston v. Keene Corporation, 406 Mass. 301, 308 (1989) (citing Opinion of the Justices, 373 Mass. 883, 885 (1977); Commissioner of Public Health v. Bessie M. Burke Memorial Hospital, 366 Mass. 734, 744 & n.18 (1975)).

The Supreme Judicial Court has never held that the Due Process provision of Article I provides inmates more extensive rights that those available under the Federal Constitution; the Court has "consistently equated as comparable, both generally and in the prison environment, the due process protections of the two fundamental documents." Hudson v. Commissioner of Correction, 46 Mass. App. Ct. 538, 543 (1999) (citing Abdullah v. Secretary of Public Safety, 42 Mass. App. Ct. 387,390-391,393 (1997); Torres v. Commissioner of Correction, 427 Mass. 611, 617-619 & n.11 (1997); Hastings v. Commissioner of Correction, 424 Mass. 46, 51-52 (1997)).

Accordingly, plaintiff's Article 1 claims fail for the same reasons as his federal due process claims.  See discussion, supra.

**D.    PLAINTIFF'S CLAIM PURSUANT TO ARTICLE 12 OF THE
MASSACHUSETTS CONSTITUTION FAILS AS A MATTER OF LAW.**

Plaintiff further appears to claim defendants have violated Article 12 of the

Massachusetts Constitution by virtue of his identification as a member of a STG.  Specifically,

plaintiff claims such in his introductory statement; however, he fails to ever tie this claim into the

factual allegations and he fails to assert this claim in his claims for relief.  Accordingly, this

claim fails on its face.  However, even if this Court considers the law of this claim, it fails as a

matter of law.

Article 12 provides:

No subject shall be held to answer for any crimes or offence, until the same is
fully and plainly, substantially and formally, described to him; or be compelled to
accuse, or furnish evidence against himself.  And every subject shall have a right
to produce all proofs, that may be favorable to him; to meet the witnesses against
him face to face, and to be fully heard in his defence by himself, or his counsel, at
his election.  And no subject shall be arrested, imprisoned, despoiled, or deprived
of his property, immunities, or privileges, put out of the protection of the law,
exiled or deprived of his life, liberty, or estate, but by the judgment of his peers,
or the law of the land.  And the legislature shall not make any law, that shall
subject any person to a capital or infamous punishment, excepting for the
government of the army and navy, without trial by jury.

Mass. Decl. of Rights, Pt. 1, Art. 12.  The Supreme Judicial Court construes Article 12 to afford

due process protection equivalent to that supplied by the Fourteenth Amendment to the United

States Constitution.  City of Boston v. Keene Corporation, 406 Mass. 301, 308 (1989) (citing

Opinion of the Justices, 373 Mass. 883, 885 (1977); Commissioner of Public Health v. Bessie M.

Burke Memorial Hospital, 366 Mass. 734, 744 & n.18 (1975)).

The Supreme Judicial Court has specifically stated that in certain due process cases,

Article 12 grants recognition of procedural rights more extensive than the Fifth Amendment.

Quegan v. Massachusetts Parole Board, 423 Mass. 834, 838 (1996).  Unlike the Fifth

Amendment, Article 12 expressly prohibits compelling a defendant to furnish evidence against himself.  Id.  Indirect pressure on a prisoner to admit guilt, such as linking parole with an admission, is acceptable, as long as the prisoner may refuse to say anything.  Id.

In prison cases, the Supreme Judicial Court has determined that analysis of Article 12 due process violations requires the same standard as cases arising under the U.S. Constitution. Hudson v. Commissioner of Correction, 46 Mass. App. Ct. 538, 543 (1999).  To wit, deprivation of a due process liberty interest occurs in the prison setting if official actions create "an atypical and significant hardship."  Hudson, 46 Mass. App. Ct. at 543 (citing Sandin v. Conner, 515 U.S. 472, 480 (1985)).  To implicate the due process clause under Article 12, one must first prove that a property or liberty interest is at stake and that the liberty interest is being violated.  Smith v. Commissioner of Mental Retardation, 409 Mass. 545, 548-549 (1991).  First, plaintiff's claims do not implicate a liberty or property interest.  See discussion, supra.  Moreover, plaintiff has not presented any factual evidence of any type of proceedings against him.  Simply put, plaintiff's identification as a member of a STG does not involve adversarial proceedings.  Rather, the identification of inmates as members of STGs is simply a mechanism to gather intelligence information, monitor inmates that may be at risk to influence other inmates and pose a significant risk to the safety and security of the DOC institutions, and to identify those inmates that do pose a risk to the safety and security of the DOC institutions, staff and other inmates by virtue of their membership in STGs.

Accordingly, plaintiff's claim pursuant to Article 12, even if considered, fails as a matter of law.

## **CONCLUSION**

For all of the foregoing reasons, defendants respectfully request their motion to dismiss be ALLOWED.

Respectfully Submitted,

NANCY A. WHITE
Special Assistant Attorney General

Dated:  January 28, 2005                    /s/ Julie E. Daniele
                                            Julie E. Daniele
                                            BBO#600093
                                            Legal Division
                                            Department of Correction
                                            70 Franklin Street, Suite 600
                                            Boston, MA 02110-1300
                                            (617) 727-3300, ext. 115

### CERTIFICATION OF SERVICE

I, Julie E. Daniele, Counsel, hereby certify that a true and accurate copy of the foregoing was sent, this date, to plaintiff, Eduardo Lopez, pro se, via first class mail.

January 28, 2005                            /s/  Julie E. Daniele